| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | FOR PUBLICATION |
| **SOUTHERN DISTRICT OF NEW YORK** | |

------------------------------------------------------------------- x

In re:

BEAR STEARNS HIGH-GRADE STRUCTURED     Chapter 15
CREDIT STRATEGIES MASTER FUND, LTD.
(IN PROVISIONAL LIQUIDATION)                          Case No. 07-12383 (BRL)

                            Debtor in a Foreign Proceeding.

------------------------------------------------------------------- x

In re:

                                                                        Chapter 15

BEAR STEARNS HIGH-GRADE STRUCTURED
CREDIT STRATEGIES ENHANCED LEVERAGE     Case No. 07-12384 (BRL)
MASTER FUND, LTD.
(IN PROVISIONAL LIQUIDATION)

                            Debtor in a Foreign Proceeding.

------------------------------------------------------------------- x

APPEARANCES:

AKIN GUMP STRAUSS HAUER & FELD LLP
Counsel for the Joint Provisional Liquidators
590 Madison Avenue
New York, New York 10022-2524
(212) 872-1000
By: Fred S. Hodara, Esq.
Lisa G. Beckerman, Esq.
Abid Qureshi, Esq.

KAYE SCHOLER LLP
Attorneys for the Merrill Lynch Entities
425 Park Avenue
New York, New York 10022
By: Madlyn Gleich Primoff, Esq.
    Jeffrey A. Fuisz, Esq.
    David M. Eskew, Esq.

By: Burton R. Lifland
    United States Bankruptcy Judge

1

**AMENDED DECISION AND ORDER DENYING
RECOGNITION OF FOREIGN PROCEEDING**

Simon Lovell Clayton Whicker and Kristen Beighton, joint provisional liquidators (the "JPLs" and the "Petitioners") of Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (In Provisional Liquidation) ("High-Grade Fund") and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Master Fund, Ltd. (In Provisional Liquidation) ("Enhanced Fund" and together with High-Grade Fund, the "Funds"), have filed petitions pursuant to section 1515 of title 11 of the United States Code (the "Bankruptcy Code") for entry of orders recognizing the liquidation (the "Foreign Proceedings") of the Funds in the Grand Court of the Cayman Islands (the "Cayman Grand Court") as foreign main proceedings pursuant to section 1517 of the Bankruptcy Code, and thereby granting related relief pursuant to section 1520 of the Bankruptcy Code and granting additional relief pursuant to section 1521(a) of the Bankruptcy Code. In the alternative, if this Court finds that the Foreign Proceedings are not eligible for recognition as foreign main proceedings, Petitioners seek recognition of the Foreign Proceedings as foreign nonmain proceedings, as defined in section 1502(5) and seek relief under section 1521 of the Bankruptcy Code.

**Background**

The Funds are both Cayman Islands exempted limited liability companies with registered offices in the Cayman Islands. The Funds are open-ended investment companies that invested in (I) investment-grade structured finance securities; (ii) asset-backed securities ("ABSs"); (iii) synthetic ABSs; (iv) mortgage-backed securities; (v) global structured asset securitizations; (vi) derivatives; (vii) options; (viii) swaps; (ix) swaptions; (x) futures; (xi) forward contracts; (xii)

equity securities; and (xiii) currencies. *See* Verified Petitions for Recognition of Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the Bankruptcy Code and Related Relief, of High-Grade Fund and Enhanced Fund ("Verified Petitions") at ¶ 2.

PFPC Inc. (Delaware), a Massachusetts corporation (the "Administrator"), is the administrator of the Funds. Pursuant to administrative services agreements between each of the Funds and the Administrator, the Administrator served as administrator, registrar and transfer agent and provided day-to-day administrative services to the Funds, including accounting and clerical functions, processing the issuance, transfer and redemption of shares, maintaining all appropriate shareholder registers and ledgers, distributing annual reports and account statements to shareholders, responding to inquiries received from shareholders, prospective investors, and others, maintaining the Funds' principal administrative records, disbursing payment of expenses of the Funds, responding to inquiries from the general public, and notifying the Funds' investment manager of redemption requests. The books and records of the Funds are maintained and stored in Delaware by the Administrator, and Deloitte & Touche, Cayman Islands, signed off on the most recent audited financial statements of the Funds. *See* Verified Petitions at ¶ 3. Bear Stearns Asset Management Inc. ("BSAM"), a corporation formed under the laws of the state of New York, is the investment manager for the Funds and the assets managed by BSAM are located within the Southern District of New York. *See* Verified Petitions at ¶ 9. Other assets of the Funds consist of receivables from broker dealers and all (or virtually all) are also located within this judicial district.[1] The investor registers, however, are held in Dublin, Ireland by an

---

[1] Subsequent to the filing of the Foreign Proceedings, substantial funds were transferred to accounts in the Cayman Islands.

affiliate of the Administrator. *See* Verified Petitions at 4, n. 1.

In early 2007, Enhanced Fund's investments performed poorly. Following the well-publicized volatility in the market related to United States sub-prime lending, by late May 2007 both Enhanced Fund and High-Grade Fund had begun to suffer a significant devaluation of their asset portfolios. The devaluation of those secured assets led to margin calls from many of their trade counterparts, which the Funds were ultimately unable to meet. This, in turn, resulted in the issuance of default notices by those counterparties and their exercise of rights under their respective agreements to seize and/or sell those assets of the Funds that had been the subject of repurchase agreements or over which they held security interests.

On or about June 20, 2007, Merrill Lynch, a United States secured creditor, issued a bid list to certain of its clients and thereafter sold off certain of these assets. This resulted in further downward pressure on the relevant asset classes and a revaluation of the Funds' assets.

On July 30, 2007, the boards of directors of both Enhanced Fund and High-Grade Fund passed resolutions, authorizing each of the Funds to file petitions seeking orders that the Funds be wound up under the provisions of the Companies Law of the Cayman Islands and to apply for the appointment of the Petitioners to act as JPLs of the Funds, subject to the supervision of the Cayman Grand Court. On July 31, 2007, the Cayman Grand Court entered orders appointing the Petitioners as the JPLs of the Funds.

Treating both petitions as factually similar if not identical, the Petitioners contend that the Foreign Proceedings are "foreign main proceedings" as defined by section 1502(4) of the Bankruptcy Code, because the Foreign Proceedings are pending in the Cayman Islands, which is the "center of main interests" for the Funds as defined by sections 1502(4), 1516(c), 1517(b)(1)

of the Bankruptcy Code. The Petitioners contend because: (i) recognition of the Foreign Proceedings would not be contrary to public policy under section 1506; (ii) the Foreign Proceedings are foreign main proceedings under section 1502(4); (iii) the Petitioners are persons authorized in the Foreign Proceedings to administer the liquidation of the Foreign Debtors' assets in the Cayman Grand Court; and (iv) Petitioners have complied with all requirements of section 1515 and Interim Bankruptcy Rule 1007(a)(4), Petitioners are entitled to entry of an order recognizing the Foreign Proceedings as foreign main proceedings under section 1517(b)(1), and are entitled to the appropriate relief as set forth in sections 1520 and 1521 of the Bankruptcy Code. Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch International and Merrill Lynch Capital Services, Inc. (collectively, the "Merrill Lynch Entities"), have filed an ambiguous statement requesting that no finding relating to the Funds' center of main interest would control any choice of law determination for actions brought by the JPLs in the United States.[2] No other party has filed a response or objection to the relief requested. However, recognition under section 1517 is not to be rubber stamped by the courts. This Court must make an independent determination as to whether the foreign proceeding meets the definitional requirements of sections 1502 and 1517 of the Bankruptcy Code.

**Discussion**

---

[2] This statement on its face can be construed as a partial objection as it arguably supports that portion of the request for nonmain recognition relegating choice of law and substantive law determinations away from Cayman Islands jurisprudence. The JPLs' responsive offer (*see* Joint Memorandum of Law in Support of Recognition of Foreign Proceedings as Foreign Main Proceedings) to accommodate the Merrill Lynch Entities' concerns by including the requested language in an order recognizing the proceeding as a main proceeding injects little or no clarity regarding choice of law issues as it presumptively presupposes this Court finding a "main proceeding" and that the JPLs in their discretion would pursue U.S. actions.

5

*Chapter 15 Petition for Recognition*

Chapter 15 of the Bankruptcy Code was enacted in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 and implemented the Model Law on Cross-Border Insolvency (the "Model Law") promulgated by the United Nations Commission on International Trade Law ("UNCITRAL"); H.R. REP. NO. 109-31, at 105-07 (2005), U.S. Code Cong. & Admin. News 2005, p. 88; *In re Tri-Continental Exchange Ltd.,* 349 B.R. 627, 631-32 (Bankr. E.D. Cal. 2006).

Unique to the Bankruptcy Code, Chapter 15 contains a statement of purpose: "[t]he purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency," with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses. 11 U.S.C. § 1501(a)(1)-(5); *In re SPhinX, Ltd.* 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006), *aff'd*, 2007 WL 1965597 (S.D.N.Y. July 3, 2007).

Chapter 15 accords the court substantial discretion and flexibility.  However, the process of recognition of a foreign proceeding is a simple single step process incorporating the definitions in sections 1502 and 101(23) and (24) to determine recognition as either a main or nonmain proceeding or nonrecognition.  *See* Jay Lawrence Westbrook, *Locating the Eye of the Financial Storm*, 32 BROOK. J. INT'L L. 3, 6 (2007 publication pending) (hereinafter "Westbrook

6

Article") ("The Model Law grants great discretion as to specific relief, but imposes a fairly rigid procedural structure for recognition of foreign proceedings."); Daniel M. Glosband, *SPhinX Chapter 15 Opinion Misses the Mark*, 25 AM. BANKR. INST. J. 44, 45 (Dec./Jan. 2007) (hereinafter "Glosband Article") ("foreign proceedings are eligible for recognition only if they meet the definitional requirements of either a foreign main proceeding or a nonmain proceeding");[3] *contra In re SPhinX, Ltd.,* 351 B.R. 103 (discussed below). The determination is a formulaic one. A simple recognition of a foreign proceeding without specifying more (i.e., non- declaration as to either "main or nonmain") is insufficient as there are substantial eligibility distinctions and consequences. In other words, the recognition must be coded as either main or nonmain. *See* H.R. REP. NO. 109-31, p. 114 ("A petition under section 1515 must show that a proceeding is main or a qualifying non-main proceeding in order to obtain recognition under this section."); Glosband Article at 85 ("If the foreign proceeding is not pending in a country where the debtor has its [center of main interests] or where it has an establishment, then the foreign proceeding is simply not eligible for recognition under chapter 15.").[4]

A case under chapter 15 is commenced by a foreign representative filing a petition for

---

[3] Both authors, Mr. Glosband and Professor Westbrook, along with myself, were among the authors of the Model Law and Chapter 15 of the Bankruptcy Code.

[4] *But see In re Schefenacker plc*, Case No. 07-11482, Order, Pursuant to §§ 105(a), 1507, 1517 and 1521, Recognizing Company Voluntary Arrangement as Either Foreign Main Proceeding or Foreign Nonmain Proceeding, Enforcing Company Voluntary Arrangement in the United States, and Granting Other Appropriate Relief, dated June 14, 2007, ECF 81, www.nysb.uscourts.gov. Court granted recognition without distinguishing between main and nonmain proceeding because the foreign proceeding clearly qualified as one or the other and the relief sought - recognition of the injunction contained in the company voluntary arrangement approved by the U.K. Court - would be granted in either a foreign main proceeding or a foreign nonmain proceeding. *See* Transcript of Hearing dated June 14, 2007 at 32, ECF # 90.

recognition of a foreign proceeding under section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1504. The petition for recognition must be accompanied by evidentiary documents which are presumed to be authentic in the absence of evidence to the contrary. *See* 11 U.S.C. § § 1515(b); 1516(b).

Here, as demonstrated by the Petition and the accompanying Declarations, the Petitioners are duly authorized foreign representatives of the Funds entitled to petition this Court for recognition of the Foreign Proceedings under section 1509.

A foreign representative may obtain recognition of a foreign proceeding as either a foreign main or nonmain proceeding. 11 U.S.C. § 1517(a)(1). Here, the Petitioners seek recognition as a main proceeding or alternatively, as a nonmain proceeding.

### *Main Recognition*

A foreign main proceeding is defined as a "foreign proceeding pending in the country where the debtor has the center of its main interests" (which is referred to as the "COMI"). 11 U.S.C. § 1502(4); *In re Petition of Lloyd*, 2005 WL 3764946, *2 (Bankr. S.D.N.Y. 2005) (Order granting recognition of foreign main proceeding). A foreign nonmain proceeding means any other proceeding "pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). "Establishment" is defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).

Section 1516(c) provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *In re Tri-Continental Exchange Ltd.,* 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) "(In effect, the registered office (or place of incorporation) is evidence that is probative of, and that

8

may in the absence of other evidence be accepted as a proxy for, 'center of main interests.' The registered office, however, does not otherwise have special evidentiary value and does not shift the risk of nonpersuasion, i.e., the burden of proof, away from the foreign representative seeking recognition as a main proceeding.").

The legislative history to section 1516(c) further explains that "the presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy." *See* H.R. REP. NO. 31, 109th Cong., 1st Sess 1516 (2005). This presumption "permits and encourages fast action in cases where speed may be essential, while leaving the debtor's true 'center' open to dispute in cases where the facts are more doubtful." *See* Westbrook Article at 15. This presumption is not a preferred alternative where there is a separation between a corporation's jurisdiction of incorporation and its real seat. *Id.*

Chapter 15 changed the Model Law standard that established the presumption in "the absence of ***proof*** to the contrary," to a presumption in "the absence of ***evidence*** to the contrary." The legislative history explains that the word "proof" was changed to "evidence" to make it clearer using United States terminology that the ultimate burden is on the foreign representative.[5] *See* H.R. REP. NO. 109-31, 112-13 (2005). According to one commentator, "[w]hatever may be the proper interpretation of the EU Regulation, the Model Law and Chapter 15 give limited weight to the presumption of jurisdiction of incorporation as the COMI." *See* Westbrook Article

---

[5] For a detailed analysis of the differences between the Model Law and Chapter 15 *see* Burton R. Lifland, *Chapter 15 of the United States Bankruptcy Code: An Annotated Section-By-Section Analysis, in Cross-border insolvency and conflict of jurisdictions, A US-EU experience,* (George Affaki ed., Bruylant & FEC 2007)

at 15-16. Accordingly, "[i]f the foreign proceeding is in the country of the registered office, and if there is evidence that the center of main interests might be elsewhere, then the foreign representative must prove that the center of main interest is in the same country as the registered office." *See In re Tri-Continental Exchange Ltd.,* 349 B.R. at 635; *see also In re Petition of Lloyd*, Case No. 05-60100 (BRL), Verified Petition under Chapter 15 for Recognition of a Foreign Proceeding, ¶9 ECF # 2, www.nysb.uscourts.gov (Debtor was mutual insurance company registered in France but demonstrated that center of main interest was located in the United Kingdom ("UK")).[6]

The Bankruptcy Code does not state the type of evidence required to rebut the presumption that the COMI is the debtor's place of registration or incorporation. Various factors could be relevant to such a determination, including: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes. *In re SPhinX, Ltd.,* 351 B.R. at 117. Here the factors to inform the Court's determination come from the Petitioners own submissions. Chapter 15 also directs courts to obtain guidance from the application of similar statutes by foreign jurisdictions: "[i]n interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with

---

[6] In *Lloyd,* the petitioners, foreign representatives of a UK scheme of arrangement, provided evidence sufficient to establish that the main insurance business was primarily conducted in the UK thus rebutting the presumption of COMI in France, the place of registration.

the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508; *In re SPhinX, Ltd.,* 351 B.R. at 118.

One of the sources that a United States court may look to as persuasive is the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency ("Guide") that was promulgated in connection with the approval of the Model Law. *See* Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency, U.N. Gen. Ass., UNCITRAL 30th Sess., U.N. Doc. A/CN.9/442 (1997); *see RSM Richter v. Aguilar (In re Ephedra Products Liability Litigation)*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (Rakoff, D.J.) ("the House Judiciary Committee, in enacting Chapter 15, specifically indicated that the Guide 'should be consulted for guidance as to the meaning and purpose of [Chapter 15's] provisions.'" *quoting* H.R. REP. NO. 109-31(I), at 106 n. 101, *as reprinted in* 2005 U.S.C.C.A.N. 169 n. 101."). The Guide explains that the use of the concept "where the debtor has the centre of its main interests" as the determinant that a foreign proceeding is a "main" proceeding was modeled on the use of that concept in the European Union Convention on Insolvency Proceedings ("EU Convention") that was already in the process of being adopted when UNCITRAL drafted the Model Law.

In the regulation adopting the EU Convention, the COMI concept is elaborated upon as "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." Council Reg. (EC) No. 1346/2000, ¶ 13; *see also* Case 341/04, *Bondi v. Bank of America, N.A. (In re Eurofood IFSC Ltd.)*, 2006 E.C.R. I-3813, p. I8-I9, ¶32, 2006 WL 1142304 (E.C.J. May 2, 2006). This generally equates with the concept of a "principal place of business" in United States law. *See In re Tri-Continental Exchange Ltd.*, 349 B.R. at 633-34.

As noted by the European Court of Justice, the COMI presumption may be overcome "particular[ly] in the case of a 'letterbox' company not carrying out any business in the territory of the Member State in which its registered office is situated." *See In re Eurofood IFSC Ltd.*, *supra* at ¶35; *see also In re SPhinX, Ltd.*, 2007 WL 1965597 (S.D.N.Y. July 3, 2007). In addition, the Guide explains that the presumption does "not prevent, in accordance with applicable procedural law, calling for or assessing other evidence if the conclusion suggested by the presumption is called into *question by the court* or an interested party." *See* Guide ¶ 122.

The Petitioners basically argue that because no objections have been filed and the Funds' registered offices are in the Cayman Islands, this Court should recognize the Foreign Proceedings as main proceedings. In other words, the Petitioners contend that this Court should accept the proposition that the Foreign Proceedings are main proceedings because the Petitioners say so and because no else says they aren't.[7] This contention must be rejected.

The Petitioners' own pleadings provide the evidence to establish that the Funds' COMI is in the United States, not the Cayman Islands. The only adhesive connection with the Cayman Islands that the Funds have is the fact that they are registered there.[8] Section 1516(c) presumes that the COMI is the place of the debtor's registered office but only "[i]n the absence of evidence to the contrary." *See* 11 U.S.C. § 1516(c). The Verified Petitions have demonstrated such

---

[7] There may be many reasons for the lack of objections including the fact that many members of the financial communities have their own similar relationships with offshore jurisdictions.

[8] The only business done in the Cayman Islands apparently was limited to those steps necessary to maintain the Funds in good standing as registered Cayman Islands companies, thus the Funds closely approximate the "letterbox" companies referred to in the *Eurofoods* decision.

evidence to the contrary: there are no employees or managers in the Cayman Islands,[9] the investment manager for the Funds is located in New York, the Administrator that runs the back-office operations of the Funds is in the United States along with the Funds' books and records and prior to the commencement of the Foreign Proceeding, all of the Funds' liquid assets were located in United States.[10]  Although two of the three investors in the High-Grade Fund are also registered Cayman Islands companies, Mr. Whicker, one of the JPLs, testified that both are Bear Stearns entities which appear to have the same minimum Cayman Islands profile as do the Funds.  The sole investor in the Enhanced Fund is a U.K. entity.  *See* Transcript of Hearing dated August 27, 2007 at 23.  The investor registries are maintained and located in the Republic of Ireland; accounts receivables are located throughout Europe and the United States; counterparties to master repurchase and swap agreements are based both inside and outside the United States but none are claimed to be in the Cayman Islands.  Moreover, there apparently exists the possibility that prepetition transactions conducted in the United States may be avoidable under U.S. law.  Accordingly, the presumption that the COMI is the place of the Funds' registered offices has been rebutted by evidence to the contrary.  As noted, each of the Funds' real seat and therefore their COMI is the United States, the place where the Funds conduct the administration of their interests on a regular basis and is therefore ascertainable by third parties, (*see* Council Reg. (EC) No. 1346/2000, ¶ 13;  *see also In re Eurofood IFSC Ltd.*,

---

[9] Although two of the directors of the Funds reside in the Cayman Islands.  *See* Transcript of hearing on Order to Show Cause for Preliminary Injunction, August 9, 2007, ("August 9 Transcript") p13.

[10] The Petitioners' have represented that there now exists bank accounts in the Cayman Islands to which the funds maintained in the United States were transferred subsequent to the filing of the Foreign Proceedings.  *See* August 9 Transcript, p 22

*supra,* at ¶32) and, more specifically, is located in this district where principal interests, assets and management are located. *See* Verified Petitions at ¶¶ 1, 3, 9. Thus, I cannot grant recognition of the Foreign Proceedings as main proceedings.

In so holding, I part with the dicta in the *SPhinX* decision opining that if the parties in interest had not objected to the Cayman Islands proceeding being recognized as main, recognition would have been granted under the sole grounds that no party objected and no other proceeding had been initiated anywhere else.[11] *See In re SPhinX, Ltd.,* 351 B.R. at 117. To the extent that non objection would make the recognition process a rubber stamp exercise, this Court disagrees with the dicta in the *SPhinX* decision. *See* Westbrook Article at 7. *See also Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003) ("Rubber-stamp approval, even in the absence of objections, is improper.").

The two other Cayman Islands chapter 15 cases cited by the Petitioners that have been granted recognition by this Court as main proceedings are inapposite. In addition to having registered offices in the Cayman Islands, the debtors conducted business there, thus also meeting the "establishment" requirement. *See Bancredit Cayman Limited (In Liquidation)*, Case No. 06-11026, Chapter 15 Petition for Recognition of Foreign Proceeding as Foreign Main Proceeding, ECF #1, www.nysb.uscourts.gov (Debtor was a foreign bank incorporated in 1988 in the Cayman Islands, where it managed deposits, accounts, loans, and provided other credit services primarily for clients located in the Dominican Republic.); *Amerindo Internet Growth Fund Limited*, Case No., 07-10327, Verified Petition for Recognition of Foreign Main

---

[11] The court refused "main" status largely on the ground of the <u>bad faith</u> motives of those who brought the Cayman Island proceedings.

Proceeding Pursuant to Sections 1515 and 1517 of the Bankruptcy Code and Related Relief, ECF # 2, www.nysb.uscourts.gov (Debtor was an investment company registered in the Cayman Islands which commenced business with a Cayman Islands investment manager and a Cayman Islands administrator, who maintained the books and records in the Cayman Islands and managed the Debtor's day-to-day business in the Cayman Islands).

### *The Nonmain Recognition Alternative*

If recognition is to be accorded to the Foreign Proceeding as nonmain, the eligibility requirements of section 1502(5) must be met. Specifically, there must be an "establishment" in the Cayman Islands for the conduct of *nontransitory* economic activity, i.e., a local place of business.[12] *See* 11 U.S.C. § 1502(5)(emphasis added). Here the bar is rather high, especially in view of the Cayman Islands' statutory prohibition against "exempted companies" engaging in business in the Cayman Islands except in furtherance of their business otherwise carried on *outside* of the Cayman Islands. *See* Companies Law (2004 Revision) of the Cayman Islands § 193.[13] As has been shown above, there is no (pertinent) nontransitory economic activity conducted locally in the Cayman Islands by the Funds; only those activities necessary to their

---

[12] This definition of establishment arose from the rejection, in relation to the EC Regulation, of the presence of assets as a sufficient basis for taking local jurisdiction. *See* Glosband Article at 45.

[13] As Mr. Whicker testified, the Funds are subject to the prohibitions of section 193, set forth at length:
> An exempted company shall not trade in the Islands with any person, firm or corporation except in furtherance of the business of the exempted company carried on outside the Islands:
> Provided that nothing in this section shall be construed so as to prevent the exempted company effecting and concluding contracts in the Islands and exercising in the Islands all of its powers necessary for the carrying on of its business outside of the Islands.

Companies Law (2004 Revision) of the Cayman Islands § 193 (emphasis added).

offshore "business." *See id*. Additionally, the only cash account funds on deposit (over $15 million) migrated there <u>after</u> the Cayman Islands proceedings were initiated. Clearly, even if I were to strain to find sufficient factors to satisfy the "nonmain" eligibility status pursuant to section 1502(5), the effort does not yield a finding of a seat for local business activity (proxy for establishment).

I recognize that portions of this holding are at odds with the decisions in *SPhinX*, both the bankruptcy court's decision and the district court's affirmance. However, neither of those courts addressed the "establishment" requirement. Instead, the district court explained that the bankruptcy court's recognition of the foreign proceeding as a nonmain proceeding was a "pragmatic one" as no other proceedings were pending and someone had to conduct the "winding up." *See In re SPhinX,* 2007 WL 1965597, *7 ("Collectively, these improper purposes and rebuttal analyses, combined with pragmatic considerations, led the Bankruptcy Court to conclude 'where so many objective factors point to the Cayman Islands not being the Debtors' COMI, and no negative consequences would appear to result from recognizing the Cayman Islands proceedings as nonmain proceedings, that is the better choice." *quoting In re SPhinX,* 351 B.R. at 122.)

The Petitioners' reliance on the discretionary and flexibility attributes of caselaw under former section 304 of the Bankruptcy Code is misplaced. While much of the jurisprudence developed under section 304 is preserved in the context of new section 1507, section 304 did not have a recognition requirement as a first step. Moreover, the eligibility requirements of section 109 of the Bankruptcy Code (entitled "Who may be a debtor"), did not apply to section 304 but are very specific as to who qualifies for relief under each of the other chapters of the Bankruptcy

16

Code.[14]  Section 304 simply gave the United States courts the authority to open an ancillary proceeding and grant various broad forms of relief to the foreign representative.  *See In re Culmer*, 25 B.R. 621, 624 (Bankr. S.D.N.Y. 1982).  Chapter 15, on the other hand, imposes a rigid procedural structure for recognition of foreign proceedings as either main or nonmain and thus the jurisprudence developed under section 304 is of no assistance in determining the issues relating to the presumption for recognition under chapter 15.

*Conclusion*

Accordingly, because the Foreign Proceedings are not pending in a country where the Funds have their COMI or where they have an establishment, the Foreign Proceedings are not eligible for relief as main or nonmain proceedings under chapter 15.

Nonrecognition of the Foreign Proceedings, however, does not leave the Petitioners without the ability to obtain relief from US courts.  11 U.S.C. § § 303(b)(4) and 1509(f); *see also* Jennifer D. Morton, Note, *Recognition of Cross-Border Insolvency Proceedings: an Evaluation of Solvent Schemes of Arrangement and Part VII Transfers under U.S. Chapter 15*,  29 FORDHAM INT'L L.J. 1312, 1363 (2006).  While section 304 of the Bankruptcy Code was repealed upon the enactment of chapter 15, section 303 was not repealed.  Section 303(b)(4) of the Bankruptcy Code specifically provides that an involuntary case may be commenced under chapter 7 or 11 of the Bankruptcy Code by a foreign representative of the estate in a foreign proceeding so that a foreign representative is not left remediless upon nonrecognition.[15]  11

---

[14]  For example, section 109(f) provides that only a family farmer or a family fisherman with regular annual income may be a debtor under chapter 12 of this title.  11 U.S.C. § 109(f).

[15] It would appear that the failure to repeal section 303(b)(4) along with section 304 may be a drafting error in view of the newly enacted section 1511(b) which likewise addresses the

U.S.C. § 303(b)(4); *contra U.S.A. v. J.A. Jones Construction Group, LLC,* 333 B.R. 637 (E.D.N.Y. 2005) (Magistrate Judge Go opined that in the absence of recognition under chapter 15, a federal court has no authority to grant a stay of litigation against a foreign debtor). Section 303(b)(4) does not require that the foreign proceeding be recognized.[16] This flexibility leaves open the potential coordination of a case filed here under Title 11 with the Foreign Proceeding. *See* 11 U.S.C. § 1529 (implicating cooperation and coordination among proceedings under sections 1525, 1526 and 1527 of the Bankruptcy Code, i.e., section 1527(5), concurrent proceedings involving the same debtor).

In addition, section 1509(f) of the Bankruptcy Code provides that the failure of a foreign representative to obtain recognition under this chapter does not affect any right the foreign representative may have to sue in a court in the United States to collect or recover a claim which is the property of the debtor. 11 U.S.C. § 1509(f).

Accordingly, the request for recognition as a foreign main proceeding or alternatively, as

---

commencement of a case under sections 301 and 303. The inconsistencies of the two statutes have not been conformed.

[16] Section 101(23) of the Bankruptcy Code simply provides that
> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

Section 101(24) provides that
> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

18

a foreign nonmain proceeding is denied without prejudice to the filing of a Title 11 case (see below).

In view of the foregoing holding, the preliminary injunction order of August 9, 2007, issued pursuant to section 1519 of the Bankruptcy Code shall remain in effect for a period of 30 days from the date of the original decision and order (August 30, 2007) so as to give parties in interest an opportunity to file a petition for relief under chapters 7 or 11 of the Bankruptcy Code in the district where the seat of the Funds' management functions are located. In the event that there are no such filings, the injunction order of August 9, 2007 shall automatically dissolve upon expiration of the 30 day period.

IT IS SO ORDERED.

Dated: New York, New York
      September 5, 2007

                                                /s/ Burton R. Lifland
                                                United States Bankruptcy Judge